## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF TEXAS
## HOUSTON DIVISION

| | |
|---|---|
| EDWARD ROBERTS, CHRISTINE ROBERTS and LAILA ROBERTS, individually and on behalf of all others similarly situated,<br><br>        Plaintiffs,<br><br>v.<br><br>NEW ERA ENTERPRISES, INC. AND NEW ERA LIFE INSURANCE COMPANY,<br><br>        Defendants. | Case No.: <u>4:25-cv-1381</u><br><br>**CLASS ACTION COMPLAINT**<br><br>**DEMAND FOR JURY TRIAL** |

Plaintiffs Edward, Christine, and Laila Roberts ("Plaintiffs") bring this Class Action Complaint, individually and on behalf of a class of all similarly situated persons, against Defendants New Era Enterprises, Inc. and New Era Life Insurance Company ("Defendants"). Plaintiffs allege as follows based upon information and belief, investigation of counsel, and their own personal knowledge.

### NATURE OF THE ACTION

1.     Plaintiffs bring this action against Defendants for their failure to properly secure and safeguard highly valuable, protected, personally identifiable information ("PII") and personal healthcare information ("PHI") in their possession and/or control, including, but not limited to names, addresses, dates of birth, health insurance policy numbers, and data related to medical diagnoses and treatments.

1

2.      Defendants are insurers. As such, they knowingly obtain sensitive insured information and have a resulting duty to securely maintain such information in confidence. As Defendants are or should have been aware, this type of personal and sensitive data is highly targeted and sought after by hackers who seek to exploit that data for nefarious purposes. In the wrong hands, these types of sensitive data may be wielded to cause significant harm to individuals including Plaintiffs and the Class Members.

## PARTIES

3.      Plaintiffs are citizens of the State of Montana. Plaintiffs were customers/insureds of Defendants at all relevant times who were notified by Defendants that their PII and PHI was compromised in the Data Breach.

4.      Defendant New Era Enterprises, Inc., is incorporated in Texas with its principal place of business in Houston, Texas.

5.      Defendant New Era Life Insurance Company has its principal place of business in Houston, Texas.

6.      Plaintiff requests leave to amend this complaint should additional defendants or causes of action become known.

## JURISDICTION AND VENUE

7.      This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(d), the Class Action Fairness Act, because Plaintiffs and at least one member of the Class, as defined below, are citizens of a different state than Defendant, there

are more than 100 members of the Class, and the aggregate amount in controversy exceeds $5,000,000 exclusive of interests and costs.

8.    This Court has personal jurisdiction over Defendants because they are incorporated in Texas and/or have their principal place of business in Texas, and do business in Texas.

9.    This Court is the proper venue for this action pursuant to 28 U.S.C. § 1391 because Defendants reside in this District, a substantial part of the events and omissions giving rise to Plaintiffs' claims occurred in this District, and Defendants conduct substantial business within this District.

## FACTUAL BACKGROUND

10.    Defendants provide insurance services and products.

11.    In the course of administering these services/selling their insurance products, Defendants receive and handle customers' PII and PHI.

12.    By generating, obtaining, collecting, using, and deriving a benefit from Plaintiffs' and Class members' PII and PHI, Defendants assumed legal and equitable duties and knew or should have known that it was responsible for protecting Plaintiffs' and Class members' PII and PHI from disclosure.

13.    PII and PHI have considerable value and are enticing and well-known targets to hackers. Hackers easily can sell stolen data as there has been a

"proliferation of open and anonymous cybercrime forums on the Dark Web that serve as a bustling marketplace for such commerce."[1]

14.     Hackers and cybercriminals often trade stolen PII and PHI on the cyber black market for years following a breach. Cybercriminals can also post stolen PII and PHI on the internet, thereby making such information publicly available.

15.     The prevalence of data breaches and identity theft has increased dramatically in recent years, accompanied by a parallel and growing economic drain on individuals, businesses, and government entities. In 2023, there were 3,205 publicly disclosed data compromises, affecting over 353 million victims. The U.S. specifically saw a 72% increase in data breaches from the previous all-time high in 2021 and a 78% increase over 2022.[2]

16.     In tandem with the increase in data breaches, the rate of identity theft complaints has also increased in recent years. For instance, in 2019, roughly 3.5 million people reported some form of identity theft, fraud, or other consumer complaint compared to 5.4 million people in 2023.[3]

---

[1] Brian Krebs, *The Value of a Hacked Company*, Krebs on Security (July 14, 2016), http://krebsonsecurity.com/2016/07/the-value-of-a-hacked-company/.

[2] *2023 Data Breach Report*, IDENTITY THEFT RESOURCE CENTER (Jan. 2024), https://www.idtheftcenter.org/wp-content/uploads/2024/01/ITRC_2023-Annual-Data-Breach-Report.pdf.

[3] *Facts + Statistics: Identity theft and cybercrime*, INSURANCE INFORMATION INSTITUTE, https://www.iii.org/fact-statistic/facts-statistics-identity-theft-and-cybercrime#Key%20Facts (last visited July 18, 2024).

17.    On or about February 1, 2025, Defendants announced that they experienced a "security incident." The "security incident" involved an international cybercriminal group who intentionally stole Plaintiffs' and the Class's PII and PHI, misused it, threatened to publish and/or has published on the Dark Web the information such that it could be used to perpetrate identity theft and/or fraud.

18.    The Data Breach occurred as a direct result of Defendants' failure to implement and follow basic security procedures to protect their customers' PII and PHI.

19.    Defendants filed a notice of data breach with the Attorney General of Maine, which maintains a database of data breach notifications.

20.    Plaintiffs each received from Defendants a notice informing them that their PII and PHI had been compromised in the Data Breach incident. Plaintiffs' notices are attached hereto as Exhibit A.

21.    Plaintiffs have suffered actual injury in the form of damages to and diminution of value to their PII and PHI- a form of tangible property that Plaintiffs entrusted to Defendants.

22.    Plaintiffs have experienced concern and fear since learning their PII and PHI has been compromised by cybercriminals. They have expended several hours researching the breach, contacting their bank, researching how to prevent identity theft, checking their credit, and contacting their lenders.

23.    Once PII is exposed, there is little that can be done to ensure that the exposed information has been fully recovered or obtained against future misuse. For this reason, Plaintiffs and Class members will need to maintain these heightened measures for years, and possibly their entire lives because of Defendants' conduct.

24.    As a result of Defendants' failures, Plaintiff and Class members are also at substantial and certainly impending increased risk of suffering identity theft and fraud or misuse of their PII.

25.    Further, because Defendants delayed discovering and notifying Plaintiff about the Data Breach for several months, Plaintiff was unable to take affirmative steps during that time period to attempt to mitigate any harm or take prophylactic steps to protect against injury.

26.    Plaintiffs are three of the over 300,000 Defendant insureds/customers whose PII and PHI were compromised by Defendants in the Data Breach incident.

27.    The consequences of Defendants' failure to keep Plaintiffs' and Class members' PII secure are long-lasting and severe. Indeed, the breadth of the data compromised in the Data Breach makes the information particularly valuable to cyber criminals and leaves Plaintiff and Class members especially vulnerable to identity theft, fraud and more.

28.    Even if stolen PII does not include financial or payment card account information, that does not mean there has been no harm, or that the breach does not cause a substantial risk of identity theft. Indeed, even where cybercriminals do not

gain access to a complete set of an individual's PII during a data breach, cybercriminals can cross-reference two or more sources of PII to marry data available elsewhere with criminally stolen data, resulting in complete and accurate dossiers on individuals. These dossiers are known as "Fullz" packages.

29.     A 2022 poll of security executives predicted an increase in attacks over the next two years from "social engineering and ransomware" as nation-states and cybercriminals grow more sophisticated. Unfortunately, these preventable causes will largely come from "misconfigurations, human error, poor maintenance, and unknown assets."[4]

30.     Defendants are prohibited by the Federal Trade Commission Act, 15 U.S.C. § 45 ("FTC Act") from engaging in "unfair or deceptive acts or practices in or affecting commerce." The Federal Trade Commission ("FTC") has concluded that a company's failure to maintain reasonable and appropriate data security for consumers' sensitive personal information is an "unfair practice" in violation of the FTC Act.

31.     The FTC has promulgated numerous guides for businesses that highlight the importance of implementing reasonable data security practices.

---

[4] Chuck Brooks, *Alarming Cyber Statistics For Mid-Year 2022 That You Need to Know*, FORBES (June 3, 2022), https://www.forbes.com/sites/chuckbrooks/ 2022/06/03/alarming-cyber-statistics-for-mid-year-2022-that-you-need-to-know/ ?sh=176bb6887864.

According to the FTC, the need for data security should be factored into all business decision-making.[5]

32.    In 2016, the FTC updated its publication titled "Protecting Personal Information: A Guide for Business," which established cyber-security guidelines for businesses.[6] The guidelines recommend that business implement the following:

a.    Businesses should promptly dispose of personal identifiable information that is no longer needed, and retain sensitive data "only as long as you have a business reason to have it;"

b.    Businesses should encrypt sensitive personal information stored on computer networks so that it is unreadable even if hackers are able to gain access to the information;

c.    Businesses should thoroughly understand the types of vulnerabilities on their network and how to address those vulnerabilities;

d.    Businesses should install intrusion detection systems to promptly expose security breaches when they occur; and

e.    Businesses should install monitoring mechanisms to watch for large troves of data being transmitted from their systems.

33.    In another publication, the FTC recommended that companies not maintain PII longer than is needed for authorization of a transaction; limit access to sensitive data; require complex passwords to be used on networks; use industry-

---

[5] U.S. Fed. Trade Comm'n, *Start with Security: A Guide for Business* (2015), https://www.ftc.gov/system/files/documents/plain-language/pdf0205-startwithsecurity.pdf (last visited July 18, 2024).

[6] *See Protecting Personal Information: A Guide for Business*, Federal Trade Commission, October 2016, available at https://www.ftc.gov/business-guidance/resources/protecting-personal-information-guide-business (last visited July 18, 2024).

tested methods for security; monitor for suspicious activity on the network; and verify that third-party service providers have implemented reasonable security measures.[7]

34.    The FTC has brought enforcement actions against businesses for failing to adequately and reasonably protect customer data, treating the failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data as an unfair act or practice prohibited by Section 5 of the FTC Act. Orders resulting from these actions further clarify the measures businesses must take to meet their data security obligations.

35.    Upon information and belief, Defendants failed to properly implement one or more of the basic data security practices described above. Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to consumer PII resulted in the unauthorized access to and exfiltration of Plaintiff's and Class members' PII by threat actors.

36.    Defendants' failure to employ reasonable and appropriate measures to protect against unauthorized access to confidential consumer data constitutes an unfair act of practice prohibited by Section 5 of the FTC Act.

37.    Similarly, the U.S. Government's National Institute of Standards and Technology ("NIST") provides a comprehensive cybersecurity framework that

---

[7] *See Start with Security: A Guide for Business*, Federal Trade Commission, June 2015, available at https://www.ftc.gov/tips-advice/business-center/guidance/start-security-guide-business (last visited July 18, 2024).

companies of any size can use to evaluate and improve their information security controls.[8]

38.     The NIST's publications include substantive recommendations and procedural guidance pertaining to a broad set of cybersecurity topics including risk assessments, risk management strategies, access controls, training, data security controls, network monitoring, breach detection, and incident response.[9] Upon information and belief, Defendants failed to adhere to the NIST guidance.

39.     Upon information and belief, Defendants' failure to protect Plaintiffs' and Class members' PII is a result of Defendants' failure to adopt reasonable safeguards required by the FTC, NIST, and industry best practices.

40.     Besides the monetary damage sustained, consumers may also spend anywhere from one day to more than six months resolving identity theft issues.[10]

41.     Ultimately, the time that victims spend monitoring and resolving identity theft issues takes an emotional toll. In 2021, the Department of Justice found that approximately 80% of victims of identity theft experienced some type of emotional distress, and more than one-third of victims experienced moderate or severe emotional distress.[11]

---

[8] *See* Nat'l Institute of Standards and Tech., *Framework for Improving Critical Infrastructure Cybersecurity*, at 24–44 (Apr. 16, 2018), https://nvlpubs.nist.gov/nistpubs/cswp/nist.cswp.04162018.pdf.

[9] *Id.* at 26–43.

[10] Erika Harrell, *Victims of Identity Theft, 2018*, Bureau of Just. Stat., U.S. DEP'T OF JUST., NCJ 256085 (Apr. 2021), https://bjs.ojp.gov/content/pub/pdf/vit18.pdf.

[11] *Id.*

42.     Plaintiffs and Class members now face years of constant surveillance of their financial and personal records, monitoring, and loss of rights. The Class is incurring and will continue to incur such damages in addition to any fraudulent use of their PII.

43.     As a result of Defendants' failure to prevent the Data Breach, Plaintiffs and Class members have suffered and will continue to suffer injuries, including loss of time and productivity through efforts to ameliorate, mitigate, and deal with the future consequences of the Data Breach; theft of their highly valuable PII; the imminent and certainly impending injury flowing from fraud and identity theft posed by their PII being placed in the hands of criminals; damages to and diminution in value of their PII that was entrusted to Defendants with the understanding the Defendants would safeguard the PII against disclosure; and continued risk to Plaintiffs' and Class members' PII, which remains in the possession of Defendants and which is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect the PII with which they were entrusted.

44.     The breach is also an invasion of the medical privacy of Plaintiffs and Class members, which is an inherent harm.

## CLASS ACTION ALLEGATIONS

45.     Plaintiffs bring this case individually and, pursuant to Rule 23 of the Federal Rules of Civil Procedure, on behalf of the class defined as:

> <u>Nationwide Class</u>: All individuals in the United States whose PII or PHI was compromised in the Data Breach which New Era noticed in early 2025.

> <u>Montana Subclass</u>: All Montana residents whose PII or PHI was compromised in the Data Breach which New Era noticed in early 2025.

46.    Excluded from the Class are Defendants, their subsidiaries and affiliates, their officers, directors and members of their immediate families and any entity in which Defendants have a controlling interest, the legal representative, heirs, successors, or assigns of any such excluded party, the judicial officer(s) to whom this action is assigned, and the members of their immediate families.

47.    Plaintiffs reserve the right to modify or amend the definition of the proposed Class prior to moving for class certification.

48.    **Numerosity.** The class described above is so numerous that joinder of all individual members in one action would be impracticable. The disposition of the individual claims of the respective Class members through this class action will benefit both the parties and this Court. The exact size of the Class and the identities of the individual members thereof are ascertainable through Defendants' records, including but not limited to, the files implicated in the Data Breach. Based upon public filings, the Class includes approximately 300,000 individuals.

49.    **Commonality.** This action involves questions of law and fact that are common to Plaintiffs and the Class members. Such common questions include, but are not limited to:

a.    whether and to what extent Defendants had a duty to protect the PII/PHI of Plaintiffs and Class members;

b.    whether Defendants were negligent in collecting and storing Plaintiffs' and Class members' PII/PHI;

c.    whether Defendants had duties not to disclose the PII/PHI of Plaintiffs and Class members to unauthorized third parties;

d.    whether Defendants took reasonable steps and measures to safeguard Plaintiffs' and Class members' PII/PHI;

e.    whether Defendants failed to adequately safeguard the PII/PHI of Plaintiffs and Class members;

f.    whether Defendants breached their duties to exercise reasonable care in handling Plaintiffs' and Class members' PHI;

g.    whether Defendants failed to implement and maintain reasonable security procedures and practices appropriate to the nature and scope of the information compromised in the Data Breach;

h.    whether Plaintiffs and Class members are entitled to damages as a result of Defendants' wrongful conduct; and

i.    whether Plaintiffs and Class members are entitled to injunctive relief to redress the imminent and currently ongoing harm faced as a result of the Data Breach.

50.    **Typicality.** Plaintiffs' claims are typical of the claims of the Class members. The claims of Plaintiffs and Class members are based on the same legal theories and arise from the same failure by Defendants to safeguard their PII. Plaintiffs and Class members directly and/or indirectly entrusted Defendants with their PII, and it was subsequently released to an unauthorized third party.

51.    **Adequacy of Representation.** Plaintiffs are an adequate representative of the Class because her interests do not conflict with the interests of the other Class members Plaintiffs seek to represent; Plaintiffs have retained counsel competent and experienced in complex class action litigation; Plaintiffs intend to prosecute this action vigorously; and Plaintiffs' counsel have adequate financial means to vigorously pursue this action and ensure the interests of the Class will not be harmed. Furthermore, the interests of the Class members will be fairly and adequately protected and represented by Plaintiffs and Plaintiffs' counsel.

52.    **Superiority.** This class action is appropriate for certification because class proceedings are superior to other available methods for the fair and efficient adjudication of this controversy and joinder of all members of the Class is impracticable. This proposed class action presents fewer management difficulties than individual litigation, and provides the benefits of single adjudication, economies of scale, and comprehensive supervision by a single court. Class treatment will create economies of time, effort, and expense and promote uniform decision-making.

53.     **Predominance.** Common questions of law and fact predominate over any questions affecting only individual Class members. Similar or identical violations, business practices, and injuries are involved. Individual questions, if any, pale by comparison, in both quality and quantity, to the numerous common questions that dominate this action. For example, Defendants' liability and the fact of damages are common to Plaintiffs and each member of the Class. If Defendants breached their duty, then Plaintiffs and each Class member suffered damages by that conduct.

54.     **Injunctive Relief:** Defendants have acted and/or refused to act on grounds that generally apply to the Class making injunctive and/or declaratory relief appropriate with respect to the Class under Fed. R. Civ. P. 23(b)(2).

55.     **Ascertainability.** Members of the Class are ascertainable. Class membership is defined using objective criteria, and Class members may be readily identified through Defendants' books and records.

<u>**FIRST CAUSE OF ACTION**</u>
**NEGLIGENCE**
**(On Behalf of Plaintiffs and the Class)**

56.     Plaintiffs restate and reallege all preceding allegations as if fully set forth herein.

57.     Defendants owed a duty under common law to Plaintiffs and Class members to exercise reasonable care in obtaining, retaining, securing, safeguarding, and protecting their PII/PHI in their possession from being compromised, lost, stolen, accessed, and misused by unauthorized persons.

58.     Specifically, this duty included, *inter alia*: (a) designing, maintaining, and testing Defendants' security systems to ensure that Plaintiffs' and Class members' PII/PHI was adequately secured and protected; (b) implementing processes that would detect a breach of their security system in a timely manner; (c) timely acting upon warnings and alerts, including those generated by their own security systems, regarding intrusions to its networks; and (d) maintaining data security measures consistent with industry standards.

59.     Defendants' duty to use reasonable care arose from several sources, including but not limited to those described below.

60.     Defendants had a common law duty to prevent foreseeable harm to others. This duty existed because Plaintiffs and Class members were the foreseeable and probable victims of any inadequate security practices on the part of Defendants. By generating, storing, and processing valuable PII/PHI that is routinely targeted by cybercriminals, Defendants were obligated to act with reasonable care to protect against these foreseeable threats.

61.     Defendants also owed a common law duty because their conduct created a foreseeable risk of harm to Plaintiffs and Class Members. Defendants' conduct included its failure to adequately restrict access to their computer networks, servers, and/or cloud computing accounts that held individuals' PII/PHI.

62.     Defendants also knew or should have known of the inherent risk in collecting and storing massive amounts of PII and PHI, the importance of

implementing adequate data security measures to protect that PII/PHI, and the frequency of cyberattacks such as the Data Breach that target such information.

63.    Defendants breached the duties owed to Plaintiffs and Class members and thus were negligent. Defendants breached these duties by, among other things: (a) mismanaging their systems and failing to identify reasonably foreseeable internal and external risks to the security, confidentiality, and integrity of customer information that resulted in the unauthorized access and compromise of PII/PHI; (b) mishandling their data security by failing to assess the sufficiency of their safeguards in place to control these risks; (c) failing to design and implement information safeguards to control these risks; (d) failing to adequately test and monitor the effectiveness of the safeguards' key controls, systems, and procedures; (e) failing to evaluate and adjust their information security program in light of the circumstances alleged herein; (f) failing to detect the breach at the time it began or within a reasonable time thereafter; (g) failing to follow its own privacy policies provided to customers; and (h) failing to adequately train and supervise employees and third party vendors with access or credentials to systems and databases containing sensitive PII/PHI.

64.    But for Defendants' wrongful and negligent breach of their duties owed to Plaintiffs and Class members, their PII and PHI would not have been compromised.

65.     As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members have suffered injuries including:

a.      theft of their PII/PHI;

b.      unauthorized charges to their bank accounts;

c.      costs associated with canceling and ordering new payment cards;

d.      time spent reporting fraudulent activity;

e.      costs associated with requesting credit freezes;

f.      costs associated with the detection and prevention of identity theft;

g.      costs associated with purchasing credit monitoring and identity theft protection services;

h.      lowered credit scores resulting from credit inquiries following fraudulent activities;

i.      costs associated with time spent and the loss of productivity from taking time to address and attempt to ameliorate, mitigate, and deal with the actual and future consequences of the Data Breach;

j.      the imminent and certainly impending injury flowing from potential fraud and identity theft posed by their PII being placed in the hands of criminals;

l.      damages to and diminution in value of their PII entrusted to Defendants with the mutual understanding that Defendants

would safeguard Plaintiff's and Class members' data against theft and not allow access and misuse of their data by others; and

m.    continued risk of exposure to hackers and thieves of their PII, which remains in Defendants' possession and is subject to further breaches so long as Defendants fail to undertake appropriate and adequate measures to protect Plaintiff and Class members.

66.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members are entitled to damages, including compensatory, punitive, and/or nominal damages, in an amount to be proven at trial.

## SECOND CAUSE OF ACTION
### NEGLIGENCE PER SE
**(On Behalf of Plaintiffs and the Class)**

67.    Plaintiffs restate and realleges all preceding factual allegations as if fully set forth herein.

68.    Section 5 of the FTC Act prohibits "unfair . . . practices in or affecting commerce" including, as interpreted and enforced by the FTC, the unfair act or practice by companies such as Defendants of failing to use reasonable measures to protect PII. Various FTC publications and orders also form the basis of Defendants' duty.

69.    Defendants violated Section 5 of the FTC Act by failing to use reasonable measures to protect PII and not complying with the industry standards.

Defendants' conduct was particularly unreasonable given the nature of their businesses and the amount of PII they generate, collect obtained and stored.

70.    Defendants' violation of Section 5 of the FTC Act constitutes negligence per se.

71.    Plaintiffs and Class members are consumers within the class of persons Section 5 of the FTC Act was intended to protect.

72.    Moreover, the harm that has occurred is the type of harm that the FTC Act was intended to guard against. The FTC has pursued over fifty enforcement actions against businesses which, as a result of their failure to employ reasonable data security measures and avoid unfair and deceptive practices, caused the same harm suffered by Plaintiffs and Class members.

73.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members have suffered injuries, including those identified in paragraph 114 above.

74.    As a direct and proximate result of Defendants' negligence, Plaintiffs and Class members have been injured as described herein and above, and are entitled to damages, including compensatory, punitive, and nominal damages, in an amount to be proven at trial.

## THIRD CAUSE OF ACTION
## UNJUST ENRICHMENT

75.    Plaintiffs restate and realleges all preceding factual allegations above as if fully set forth herein.

76.    Plaintiffs brings this claim in the alternative to her breach of implied contract claim above.

77.    By engaging in the conduct described in this Complaint, Defendants have knowingly obtained and derived benefits from Plaintiffs and Class members at Plaintiffs' and Class members' expense, namely the profits gained from payment in exchange for the use of Defendants' products and services, such that it would be inequitable and unjust for Defendants to retain.

78.    By engaging in the acts and failures to act described in this Complaint, Defendants have been knowingly enriched by the savings in costs that should have been reasonably expensed to protect the PII/PHI of Plaintiffs and the Class.

79.    Defendants' failure to direct profits derived from Plaintiffs' and Class members' payments for services toward safeguarding Plaintiffs' and Class members' PII/PHI constitutes the inequitable retention of a benefit without payment for its value.

80.    Defendants will be unjustly enriched if they are permitted to retain the benefits derived after the theft of Plaintiffs' and Class members' PII/PHI.

81.     The benefit conferred upon, received, and enjoyed by Defendants was not conferred gratuitously, and it would be inequitable and unjust for Defendants to retain the benefit.

82.     Plaintiffs and Class members have no adequate remedy at law.

83.     As a direct and proximate result of Defendants' conduct, Plaintiffs and Class members have suffered and will continue to suffer other forms of injury and/or harm, and Defendants should be compelled to disgorge into a common fund or constructive trust, for the benefit of Plaintiff and Class Members, proceeds that they unjustly received from them.

**FOURTH CAUSE OF ACTION**
**MONTANA CONSUMER PROTECTION ACT**

84.     Plaintiffs restate and realleges all preceding allegations above as if fully set forth herein.

85.     Plaintiffs and the Montana subclass are Montana consumers within the meaning of the Montana Consumer Protection Act ("MCPA") because they purchased services from Defendants for personal or family purposes.

86.     Defendants are "person[s]" engaged in "trade" and "commerce" under the MCPA because they sold, offered for sale, and distributed services directly affecting people of the State of Montana.

87.     Defendants' conduct constitutes an unfair or deceptive act or acts within the meaning of the Montana Consumer Protection Act.

88.    Defendants made certain representations concerning the privacy of Plaintiffs' and the Montana subclass's PII and PHI and Plaintiffs and the Montana subclass relied on those representations.

89.    Plaintiffs and the Montana subclass have suffered injury as a result of Defendants' unfair or deceptive acts.

90.    Pursuant to the Montana Consumer Protection Act, Plaintiffs and other Montana class members are entitled to statutory damages of the greater of $500 or treble their actual damages, costs, and attorney's fees.

## FIFTH CAUSE OF ACTION
## DECLARATORY JUDGMENT

91.    Plaintiffs restate and realleges all proceeding factual allegations as if fully set forth herein.

92.    Under the Declaratory Judgment Act, 28 U.S.C. §§ 2201, *et seq.*, this Court is authorized to enter a judgment declaring the rights and legal relations of the parties and to grant further necessary relief. Furthermore, the Court has broad authority to restrain acts that are tortious and violate the terms of the federal laws and regulations described herein.

93.    An actual controversy has arisen in the wake of the Data Breach regarding Plaintiffs' and Class members' PII/PHI and whether Defendants are currently maintaining data security measures adequate to protect Plaintiffs and Class members from further data breaches that compromise their PII. Plaintiffs allege that

Defendants still possess Plaintiffs' and Class members' PII/PHI, and that Defendants' data security measures remain inadequate. Furthermore, Plaintiffs and Class members continue to suffer injury as a result of the compromise of their PII and remains at imminent risk that further compromises of their PII will occur in the future.

94.    Under its authority pursuant to the Declaratory Judgment Act, this Court should enter a judgment declaring, among other things, the following:

        a.    Defendants owe a legal duty to secure consumers' PII under the common law and Section 5 of the FTC Act; and

        b.    Defendants continue to breach this legal duty by failing to employ reasonable data security measures to safeguard Plaintiffs' and Class members' PII.

95.    This Court also should issue corresponding prospective injunctive relief requiring Defendants to employ adequate security protocols consistent with law and industry standards to protect consumers' PII/PHI.

96.    If an injunction is not issued, Plaintiffs and Class members will suffer irreparable injury, and lack an adequate legal remedy, in the event of another data breach at either of Defendants. The risk of another such breach is real, immediate, and substantial.

97.    The hardship to Plaintiffs and Class members if an injunction is not issued exceeds the hardship to Defendants if an injunction is issued. Plaintiffs and

Class members will likely be subjected to substantial identity theft and other damage. On the other hand, the cost to Defendants of complying with an injunction by employing reasonable prospective data security measures is relatively minimal. Defendants have a pre-existing legal obligation to employ such measures.

98.    Issuance of the requested injunction will not disserve the public interest. On the contrary, such an injunction would benefit the public by possibly preventing another data breach, thus eliminating the additional injuries that would result to Plaintiffs and consumers whose confidential information would be further compromised.

## **PRAYER FOR RELIEF**

WHEREFORE Plaintiffs, on behalf of themselves and all others similarly situated, pray for relief as follows:

a.    for an order certifying the Class under Rule 23 of the Federal Rules of Civil Procedure and naming Plaintiffs as representatives of the Class and Plaintiffs' attorneys as Class Counsel to represent the Class;

b.    for an order finding in favor of Plaintiffs and the Class on all counts asserted herein;

c.    for damages in an amount to be determined by the trier of fact;

d.    for an order of restitution and all other forms of equitable monetary relief;

25

e.     declaratory and injunctive relief as described herein;

f.     awarding Plaintiffs' reasonable attorneys' fees, costs, and

expenses;

g.     awarding pre- and post-judgment interest on any amounts

awarded; and

h.     awarding such other and further relief as may be just and proper.

### **JURY TRIAL DEMANDED**

A jury trial is demanded on all claims so triable.


Dated: March 25, 2025                    Respectfully Submitted,

*/s/ Royal B. Lea, III*
Royal B. Lea, III
**ROYAL LEA LAW OFFICE PLLC**
Attorney in Charge
Texas Bar # 12069680
SDTX # 10301
1901 NW Military Hwy, Ste. 218
San Antonio, Texas 78213
(210) 862-2847
royal@royallealaw.com

John Heenan (*pro hac vice* forthcoming)
**HEENAN & COOK**
1631 Zimmerman Trail
Billings, Montana 59102
(406) 839-9091
john@lawmontana.com

Raph Graybill (*pro hac vice* forthcoming)
**GRAYBILL LAW FIRM, P.C.**
300 4th Street North

Great Falls, MT 59403
(406) 452-8566
raph@graybilllawfirm.com

*Counsel for Roberts Plaintiffs and the
Proposed Class*